**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INSURANCE COMPANY OF THE WEST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-395C** |
| | ) | **(Chief Judge Damich)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

ELLEN M. LYNCH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-7994
Fax: (202) 514-8624

August 17, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………..…....iii

ISSUE PRESENTED…………………………………………………………..…..1

STATEMENT OF FACTS……………………………………………………….…..1

SUMMARY OF ARGUMENT…………………………………………………..…...3

ARGUMENT……………………………………………………………………..…...3

I. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amounts It Paid Pursuant To That Bond……………………....3

A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction……………………………………………………..3

B. There Is No Privity Between A Non-Takeover Surety And The United States……………………………………………………..4

C. Given The Lack Of Privity Between It And The United States, The Surety's Equitable Subrogation Claim Fails To State A Claim……………………………………………………………….9

II. The Surety Failed To Give Adequate Notice Of Contractor Default Under The Bonds Issued For The Contracts…………………………………12

CONCLUSION…………………………………………………………………….14

# TABLE OF AUTHORITIES

## CASES

Admiralty Constr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Aetna Cas. & Sur. Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Aetna Cas. & Sur. Co. v. United States,
845 F.2d 971 (Fed. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argonaut Ins. Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

American Fid. Fire Ins. Co. v. United States,
513 F.2d 1375 (Ct. Cl. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Ins. Co. v. United States,
62 Fed. Cl. 151 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 12

Banks v. Garrett,
910 F.2d 1084 (Fed. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Capitol Indem. Corp. v. United States,
71 Fed. Cl. 98 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Commercial Cas. Ins. Co. of Georgia v. United States,
71 Fed. Cl. 104 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fidelity & Deposit Co. v. United States,
31 Fed. Cl. 540 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9
Fireman's Fund v. United States,
313 F.3d 1344 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

First Nat'l Bank in Houston v. United States,
350 U.S. 902 (1955).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Globe Indem. Co. v. United States,
84 Ct. Cl. 587 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Henningsen v. United States Fid. & Guar. Co.,
208 U.S. 404 (1908).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Insurance Company of the West v. United States,
55 Fed. Cl. 529 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Insurance Company of the West v. United States, ("ICW"),
243 F.3d 1367 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7, 8, 10, 13

Liberty Mut. Ins. Co. v. United States,
70 Fed. Cl. 37 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Library of Congress v. Shaw,
478 U.S. 318 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

National Leased Hous. Assoc. v. United States,
105 F.3d 1423 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

National Sur. Corp. v. United States,
118 F.3d 152 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

National Sur. Corp. v. United States,
133 F. Supp. 381, 132 Ct. Cl. 724 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Nova Cas. Co. v. United States,
69 Fed. Cl. 284 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1908).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Prairie State Bank v. United States,
164 U.S. 227 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ransom v. United States,
900 F.2d 252 (Fed. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Royal Indem. Co. v. United States,
208 Ct. Cl. 809, 529 F.2d 1312 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Terran v. Secretary of Health & Human Svcs.,
195 F.3d 1302 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Trinity Universal Ins. Co. v. United States,
382 F.2d 317 (5th Cir. 1967), cert. denied, 390 U.S. 906 (1968). . . . . . . . . . . . . . . . . . . 9

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984). . . . . . . . . . . . . . . . . 4

United States Fid. & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States Fid. & Guar. Co. v. United States,
230 Ct. Cl. 355, 676 F.2d 622 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Munsey Trust Co.,
332 U.S. 243 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

United States v. Testan,
424 U.S. 392 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Westech Corp. v. United States,
20 Cl. Ct. 745 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## MISCELLANEOUS

Restatement (Second) of Contracts at § 340 cmt. a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-395C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the United States Court of Federal Claims, defendant respectfully requests that the Court dismiss the complaint because it fails to state a claim upon which relief can be granted. Plaintiff is neither in privity with the Government, nor is the plaintiff equitably subrogated to the rights of a contractor who does have privity. In the alternative, plaintiff provided inadequate notice to trigger defendant's equitable duty to withhold payments from the contractor. In support of this motion, we rely upon the pleadings and the following brief.

ISSUE PRESENTED

1. Whether the complaint fails to state a claim upon which relief can be granted because the surety is not equitably subrogated to a party in privity with the Government, or, alternatively, whether the complaint fails to state a claim upon which relief can be granted because the surety failed to provide adequate notice to trigger defendant's duty pursuant to the doctrine of equitable subrogation to withhold payments from the contractor.

STATEMENT OF FACTS

In September 2005, the Department of Veterans Affairs ("DVA") entered into two contracts with Texas Mechanical Systems, Inc. ("Texas Mechanical"). The first contract was for the Veterans Administration Covered Ambulance Entrance ("Ambulance Entrance project") located in Big Spring, Texas, and the second contract was for the Veterans Administration Correct Electrical Deficiencies ("Electrical Deficiencies project"), also located in Big Spring, Texas. Compl. ¶¶ 3, 4. On October 14, 2005, plaintiff, a surety, issued performance and payment bonds in the amount of $450,000 in favor of the DVA for the Ambulance Entrance project, and additional performance and payment bonds in favor of the DVA for the Electrical Deficiencies project in the amount of $250,000 ("Bonds"). Compl. ¶ 5.

On June 28, 2005, plaintiff sent a letter to DVA requesting that DVA only disburse funds to Texas Mechanical after receiving plaintiff's written consent. Compl., Ex. B. The letter stated, in pertinent part: "[Insurance Company Of The West] has been made aware of claims and unpaid bills pertaining to vendors and subcontractors on another bonded project involving [Texas Mechanical Systems, Inc.]." Id.

Defendant notified plaintiff on November 22, 2006, that it had released four payments to Texas Mechanical after June 28, 2005. Compl. ¶ 8, Ex. B. These payments were made without obtaining plaintiff's consent. Id.

Plaintiff claims to have paid $123,302.59 to material suppliers and subcontractors pursuant to the Bonds. Compl. ¶ 13.

Plaintiff's complaint asserts the doctrine of equitable subrogation against defendant, and seeks money damages in the amount of $114,877.38, plus interest. Compl. ¶ ¶ 13, 14.

## SUMMARY OF ARGUMENT

A surety that paid subcontractors only pursuant to its payment bond obligation is subrogated to the rights of the subcontractors. Such a surety is therefore not in privity with the United States and cannot bring a claim against the United States under the Tucker Act. Alternatively, a surety that fails to give explicit notice of contractor default under the bonds issued for that contract does not provide adequate notice to trigger the defendant's duty pursuant to the doctrine of equitable subrogation to withhold payments from the contractor for the benefit of the surety.

## ARGUMENT

### I. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amounts It Paid Pursuant To That Bond

#### A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction

The United States Court of Federal Claims is a court of limited jurisdiction. Terran v. Secretary of Health & Human Svcs., 195 F.3d 1302, 1309 (Fed. Cir. 2000). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); Insurance Company of the West v. United States, ("ICW") 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 318 (1986); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. United States v. Testan, 424 U.S. at 399; ICW, 243 F.3d 1372.

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491 (1982). United States v. Testan, 424 U.S. at 397; Aetna Cas. & Sur. Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). That statute provides that an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

The Tucker Act confers jurisdiction upon the Court whenever a substantive right of recovery against the United States exists. United States v. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). A claimant, therefore, must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within this Court's jurisdiction. United States v. Connolly, 716 F.2d at 885. Thus, jurisdiction to entertain plaintiff's complaint exists in this Court only if the plaintiff can establish that its cause of action lies within the well-established limitations of this Court's jurisdiction. The Tucker Act indisputably contains a waiver of the Government's sovereign immunity to be sued by its contractors or by those who "stand in the shoes" of its contractors. ICW, 243 F.3d at 1375. The question is the extent to which that waiver extends.

B. There Is No Privity Between A Non-Takeover Surety And The United States

To establish jurisdiction in this Court based upon contract, a plaintiff must establish there is privity between it and the Government. National Leased Hous. Assoc. v. United States, 105 F.3d 1423, 1435-47 (Fed. Cir. 1997). The right to sue may rest either on the equitable doctrine of

subrogation, or alternatively, upon a contract right of its own. Fidelity & Deposit Co. v. United States, 31 Fed. Cl. 540, 542-43 (1994). Plaintiff in this case does not allege it has any independent contractual rights with the United States, and it has none. See National Sur. Corp. v. United States, 118 F.3d 152, 1545 (Fed. Cir. 1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts"); Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 500 (Fed. Cir. 1990) (a surety "is neither the intended third-party, nor the direct, beneficiary" of the bonded contract); Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998) (holding surety not in privity with the Government by having posted a bond on a Government contract); Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988) (same). Therefore, if the surety has privity, it is through the doctrine of equitable subrogation.

The United States Court of Appeals for the Federal Circuit has identified only "two circumstances in which a surety may succeed to the contractual rights of a contractor against the [G]overnment: when the surety takes over contract performance or when it finances completion of the defaulted contract." ICW, 243 F.3d at 1370 (citing, inter alia, Admiralty Constr. Inc. v. Dalton, 156 F.3d at 1222). This succession, or assignment of rights by operation of law, appears to be the basis upon which the "non-contractual doctrine of equitable subrogation" is founded. ICW, 243 F.3d at 1221. Absent takeover of the contract or financing completion of the contract via its performance bond, the surety is not equitably subrogated to the rights of the prime contractor and is, instead, left only with the rights that a subcontractor may have against the prime contractor.

In Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985), the Federal Circuit addressed the Claims Court's jurisdiction to consider equitable subrogation claims. In Balboa, the Court relied upon three Supreme Court cases - Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1908); Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908); and Prairie State Bank v. United States, 164 U.S. 227 (1896) - to support its conclusion that the Court possessed jurisdiction to consider a claim of equitable subrogation. Balboa Ins. Co. v. United States, 775 F.2d at 1161.

More recently, in Insurance Company of the West, the United States Court of Appeals for the Federal Circuit concluded that, after the decision in Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999),[1] the Court could no longer rely upon those three cases to find a waiver of sovereign immunity for subrogation claims. ICW, 243 F.3d at 1371-72. This conclusion followed from the Supreme Court's opinion that

> None of these cases [Prarie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity, and, in fact, none involved a subcontractor directly asserting a claim against the Government. Instead, these cases dealt with disputes between private parties over priority to funds which had been transferred out of the Treasury and as to which the Government had disclaimed any ownership.

Department of the Army v. Blue Fox, 525 U.S. at 265. In view of the private nature of the

---

[1] In Blue Fox, there was no surety, because no Miller Act bonds were required by the contract. Nevertheless, the subcontractor that brought suit occupied a position *vis-a-vis* the Government, that is somewhat analogous to the surety's position in this case. Blue Fox was a subcontractor that had not been paid by its prime contractor. Unlike this case, the Army received specific notice from the subcontractor that they were not being paid, and nevertheless paid the prime contractor. The subcontractor sued the Army in district court seeking an equitable lien, predicating jurisdiction upon the Administrative Procedures Act ("APA"). 5 U.S.C. § 702, and 28 U.S.C. § 1331. The Supreme Court found that the waiver of sovereign immunity in the APA did not extend to a claim for an equitable lien.

litigants in those cases, the question of waivers of sovereign immunity for such claims was never addressed.[2]

In Insurance Company of the West, the Court of Appeals defined the waiver of sovereign immunity found in the Tucker Act so far as it relates to a surety. The scope of that waiver is based upon the conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375 (emphasis added). The Court has also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added). Given the requirement that the surety "step into the shoes of a government contractor," id. at 1375, there is little room to argue that the Tucker Act's waiver of sovereign immunity extends beyond a takeover by a surety of its performance bond. As plaintiff in this case, Insurance Company of the West, appears to have done neither, it is not equitably subrogated to the rights of Texas Mechanical, the prime contractor. See Fireman's Fund v. United States, 313 F.3d 1344, 1352 (Fed. Cir. 2002) (even where a surety takes over performance, the surety is not subrogated to the rights of the taken over contractor for pre-takeover claims).

Insurance Company of the West alleges in its complaint only that it paid Texas Mechanical's subcontractors and suppliers, and nothing more. This singular act did not convert

---

[2] Based upon the opinion in Insurance Company of the West, there may be some question as to whether the funds at stake in Prairie State Bank had in fact been "transferred out of the Treasury." ICW, 243 F.3d at 1372 n.2. This possible factual issue, however, did not affect the Federal Circuit's conclusion that "the Supreme Court did not directly address the sovereign immunity issue in Prairie State Bank." Id.

the surety's actions into anything other than payment pursuant to its payment bond obligations. As such, the surety's actions fall within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

ICW, 243 F.3d at 1371. This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 332 U.S. 243 (1947), upon which the court of appeals relied, and in which the Supreme Court concluded

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241.[3] Thus, where the surety simply pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. The surety cannot acquire by subrogation what the subcontractor, whose rights it claims, did not have. See United States v. Munsey Trust Co., 332 U.S. at 242.

The apparent rationale for distinguishing between, on the one hand, performance bond or take-over sureties and on the other, sureties that merely satisfy the payment obligations of the prime contractor, lies in the benefit derived by the Government from the acts of the surety. The purpose of a surety agreement is "simply to insure completion of the government's project . . . at

---

[3] A number of recent cases before this Court have allowed a payment bond surety to be subrogated to the rights of the prime contractor, finding that the language in ICW supporting the Government's position is non-binding dicta. See, e.g., Commercial Cas. Ins. Co. of Georgia v. United States, 71 Fed. Cl. 104, 108 (2006); Liberty Mut. Ins. Co. v. United States, 70 Fed. Cl. 37 (2006); Nova Cas. Co. v. United States, 69 Fed. Cl. 284 (2006). The Government respectfully disagrees with that interpretation of ICW.

the contract price." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990) (citing Trinity Universal Ins. Co. v. United States, 382 F.2d 317, 321 (5th Cir. 1967), cert. denied, 390 U.S. 906 (1968). Once the contract is complete, the Government's interest in assuring performance no longer requires the protection afforded by the bond. Moreover, where the work is complete, but the suppliers and subcontractors are unpaid, "the [G]overnment suffers no damage." United States v. Munsey Trust Co., 332 U.S. at 244. "By definition and agreement, the surety protects the Government's interest, not the other way around." Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 499 (Fed. Cir. 1997). Because Insurance Company of the West stands in the shoes of the subcontractors, whose claims it paid, it lacks privity with the United States and its complaint therefore fails to state a claim.

C. Given The Lack Of Privity Between It And The United States, The Surety's Equitable Subrogation Claim Fails To State A Claim

Insurance Company of the West's complaint alleges that contract funds should have been held in trust for subcontractor payment. Compl. ¶ 7. Given the unambiguous language in ICW, Insurance Company of the West, as plaintiff in this case, cannot claim that the Government abused its discretion in executing any potential stakeholder duties because it is not in privity with the United States, nor is it equitably subrogated to such a party.

The surety's substantive claim echoes the language of cases such as Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985); United States Fid. & Guar. Co. v. United States, 230 Ct. Cl. 355, 676 F.2d 622 (1982); Royal Indem. Co. v. United States, 208 Ct. Cl. 809, 529 F.2d 1312 (1976); United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973); and Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), in which

the Court previously held that the Government acts as a stakeholder with respect to unpaid contract funds once notified of default or where the Government fails to administer the contract by its terms in such a way that the risk to the surety is increased.

In light of the Federal Circuit's ruling in ICW, such stakeholder duties enunciated in Balboa and its progeny did not survive with respect to a claim by a payment bond surety. Insurance Company of the West is subrogated only to the rights of the subcontractors and suppliers it paid pursuant to its payment bond obligations. In ICW, the Court reviewed the common law rights of an assignee with respect to contract rights: "[T]he assignee of a claim stepped into the shoes of the assignor for all purposes: 'an assignment transfers to the assignee the same right held by the assignor, with its advantages and disadvantages.'" 243 F.3d at 1374 (citing Restatement (Second) of Contracts at § 340 cmt. a). It concluded that the doctrine of sovereign immunity did not change the common law, which allowed assignees to step into the shoes of the assignor. Id. Based upon this analysis, the Court held that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." Id. at 1375. This waiver of sovereign immunity, however, is limited in that "the party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted." Globe Indem. Co. v. United States, 84 Ct. Cl. 587, 595 (1937). Thus, because a subcontractor cannot bring a claim against the United States, neither can the one who stands in the shoes of that subcontractor.

Permitting recourse by the surety against the Government, where the surety neither takes over nor finances completion of contract performance, converts the Government into an insurer

for the surety against losses precipitated by the contractor with whom the surety entered into a contract. It is "not the Government's responsibility . . . to divine the surety's thinking process or to act as a nanny for the surety." American Ins. Co. v. United States, 62 Fed. Cl. 151, 155 n. 5 (2004). Rather, the question of loss under the payment bond should be a matter to be resolved between the surety and the contractor that it bonded and that caused the loss. Based upon the superior knowledge and position of the surety, shifting the obligation to the surety to resolve such matters is neither unfair nor unreasonable.[4] The surety agreed, for a price, to accept the risk inherent in insuring the performance and payment by a contractor and occupied a better position than the Government in deciding to whom it would issue bonds.

The surety bore the risk that it was paid to bear when it was paid the premiums for issuing the bonds. Thus, the surety in this case did not complete the contract performance of its bonded contractor nor did it effectively complete the contract performance by paying for completion of contract performance under a performance bond. As such, Insurance Company of the West is not in privity with the Government and further fails to meet the criteria established to bring an equitable subrogation claim against the Government. Given this fact, the inescapable conclusion is that there is no basis for this Court to exercise jurisdiction to entertain this claim. This failure equates to a failure to state a claim upon which this Court can grant relief, for which reason the

---

[4] In Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), the Court of Claims reiterated the "well-established principle that the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion with due regard to the legal and equitable rights of others." Id., 434 F.2d at 1367 (citing National Sur. Corp. v. United States, 133 F.Supp. 381, 132 Ct. Cl. 724, cert. denied, sub nom., First Nat'l Bank in Houston v. United States, 350 U.S. 902 (1955)).

claim should be dismissed. See, e.g., Banks v. Garrett, 910 F.2d 1084, 1087-88 (Fed. Cir. 1990) (dismissing military pay claim where reservist did not meet statutory requirements of money-mandating statute).

II. The Surety Failed To Give Adequate Notice Of Contractor Default Under The Bonds Issued For The Contracts

Alternatively, Insurance Company of the West's claim for equitable subrogation in this case must fail because plaintiff did not notify the DVA that Texas Mechanical had defaulted under the performance and payment bonds issued for the Ambulance Entrance project contract and/or the Electrical Deficiencies project contract. Insurance Company of the West's letter indicated only that plaintiff was "aware of claims and unpaid bills pertaining to vendors and subcontractors on another bonded project involving TMS." Compl., Ex. B (emphasis added). A mere assertion that the contractor is potentially in default on another project is insufficient to trigger the Government's duty pursuant to the doctrine of equitable subrogation to withhold contract payments.

It is well settled that a surety's right to contract funds based upon the doctrine of equitable subrogation is established only after the surety notifies the Government of a contractor's default. Ransom v. United States, 900 F.2d 252, 245 (Fed. Cir. 1990) (citing Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed. Cir. 1985)). Therefore, a surety triggers the Government's equitable duty to withhold contract payments after providing the Government with notice of a contractor's default.

The specificity of the notice required to trigger the Government's duty is also clear. The surety must provide "notice of default under its bond . . . ." Balboa Ins. Co. v. United States, 775

F.2d at 1163 (emphasis added) (citing American Fid. Fire Ins. Co. v. United States, 513 F.2d 1375, 1379-81 (Ct. Cl. 1975)). Any other kind of notice, including the Government's actual knowledge, will not suffice. In Ransom v. United States, the Government notified the surety of its concerns regarding potential default by the contractor, prior to terminating the contract. Ransom v. United States, 900 F.2d at 245. The Court of Appeals for the Federal Circuit noted the equitable subrogation doctrine outlined in Balboa, and declined to apply the doctrine because, despite the Government's actual knowledge of the contractor's potential default, the surety itself did not provide notice to the Government of the contractor's default. See id. Following Balboa and Ransom, the Federal Circuit noted that "the government owes no duty to the surety unless the surety notifies the government of the contractor's default under the bond." Insurance Company of the West v. United States, 243 F.3d 1367, 1371 (Fed. Cir. 2001) (emphasis added). Therefore, the Federal Circuit has clearly established that, regardless of the Government's knowledge, the Government's duty under the doctrine of equitable subrogation is not triggered absent explicit notice from the surety of the contractor's default of the Government's contract. Id.

Similarly, this Court has held that a clause in the bonds directing payment to the surety is not adequate notice because "the clause was inserted in the bonds even before performance of the contract had even begun, [the contractor] could not have been in default on its performance of the contract." Capitol Indem. Corp. v. United States, 71 Fed. Cl. 98, 103 (2006). Further, this Court has found that, to trigger the Government's duty to withhold funds prior to default, "the surety must notify the Government that the contractor cannot complete the contract. Lumbermens Mut.

Cas. Co. v. United States, 67 Fed. Cl. 253, 255 (2005) (emphasis added).[5] Thus, notice of default must be specific to the bonded contract.

In this case, plaintiff claims that the doctrine of equitable subrogation applies because it notified defendant that Texas Mechanical was in default on another project. Compl., Ex. B. This notice is clearly inadequate, and does not trigger the defendant's duty under the doctrine of equitable subrogation to withhold payments from the contractor. Thus, plaintiff has failed to state a claim upon which this Court can grant relief, and the claim should be dismissed. Capitol Indem. Corp. v. United States, 71 Fed. Cl. at 104 (dismissing surety's claim where plaintiff failed to allege that it "explicitly notified the government of [the contractor's] default").

CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

---

[5] In cases where the doctrine of equitable subrogation has been applied, the surety provided explicit notice that the contractor was in default on the Government contract at issue. Insurance Company of the West v. United States, 243 F.3d 1367, 1369 (Fed. Cir. 2001) (contractor notified the Government that it could not complete its contracts and its surety would ensure completion; surety confirmed the contractor's statements in writing); Commercial Cas. Ins. Co. of Georgia v. United States, 71 Fed. Cl. 104, 106 (2006) (surety's notice letter to the Government stated it "[was] equitably subrogated to the contract funds through its payment of claims on this and other projects.") (emphasis added); Insurance Company of the West v. United States, 55 Fed. Cl. 529, 531-32 (2003) (contractor notified the Government that it was unable to complete its contracts, and the surety confirmed the contractor's default in a letter to the Government asking that all payments should be made to the surety)

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Ellen M. Lynch
ELLEN M. LYNCH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-7994
Fax: (202) 514-8624

August 17, 2007

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 17th day of August, 2007, a copy of "Defendant's Motion To Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Ellen M. Lynch
Ellen M. Lynch