IN THE UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

---

Case No. 07-395C
(Chief Judge Damich)

---

INSURANCE COMPANY OF THE WEST,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFF INSURANCE COMPANY OF THE WEST'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

Gregory M. Weinstein
Langley Weinstein Hamel, LLP
901 Main Street, Suite 600
Dallas, Texas 75202
Phone: 214-722-7160
Fax: 214-722-7161

ATTORNEYS FOR PLAINTIFF INSURANCE COMPANY OF THE WEST

September 13, 2007

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| EXECUTIVE SUMMARY | | 1 |
| I. | UNDISPUTED FACTS | 2 |
| II. | ARGUMENT AND AUTHORITIES | 3 |
| | A. A Surety is Equitably Subrogated to the Rights of a Contractor When it Has Discharged a Contractor's Obligations to Pay Subcontractors and Suppliers | 3 |
| | B. The Surety Provided the VA With Adequate Notice Necessary to Enforce its Equitable Subrogation Rights | 6 |
| III. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

## CASES

*Balboa Insurance Company v. United States*, 775 F.2d 1158 (Fed. Cir. 1985) .......................... 6, 7

*Commercial Cas. Ins. Co. v. United States*, 71 Fed. Cl. 104, 106 (2006) ...................................... 7

*Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999)...................................................... 5

*Employers Ins. of Wausau v. United States*, 23 Cl. Ct. 579, 580 (1991)...............................6

*Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001)......... 4, 5, 6, 7

*National American Insurance Co.*, 2007 U.S. App. LEXIS 20058 at *5 ...................................... 5

*National American Insurance Company v. The United States*, 72 Fed. Cl. 451, 454 (2006), *aff'd* 2007 U.S. App. LEXIS 20058 (Fed. Cir. Aug. 23, 2007 ........................................................ 4, 7

*Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 136-37 (1962).................................... 3

*Ransom v. United States*, 900 F.2d 242 (Fed. Cir. 1990) .......................................................... 6, 7

*The Home Insurance Company v. The United States,* 46 Fed. Cl. 160, 162 (2000)...................... 4

*United States Fidelity & Guaranty Co. v. United States,* 475 F.2d 1377, 1381 (Ct. Cl. 1973)...... 3

*United States v. Munsey Trust Co.*, 332 U.S. 243 (1947)........................................................ 4, 5

## STATUTE

40 U.S.C. § 3131.......................................................................................................................... 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INSURANCE COMPANY OF THE WEST** | ) | |
| *Plaintiff*, | ) | |
| V. | ) | **No. 07-395C** |
| **THE UNITED STATES** | ) | **(Chief Justice Damich)** |
| *Defendant.* | ) | |

**INSURANCE COMPANY OF THE WEST'S**
**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Insurance Company of the West (the "Surety"), files this Response to *Defendant, The United States' Motion to Dismiss,* and would respectfully show the Court the following:

**EXECUTIVE SUMMARY**

The Surety brought suit against Defendant following refusal by the Department of Veteran Affairs (the "VA") to abide by a letter of direction regarding holding contract balances on two construction projects bonded by the Surety in which the VA served as obligee. Defendant seeks a dismissal of the Surety's claims based on two theories: (1) the Surety is only subrogated to the rights of subcontractors, and not its principal, the general contractor; and, in the alternative, (2) the Surety failed to provide notice of its principal's default on the projects. Both arguments are without merit. First, Defendant ignores a lengthy line of precedent that a Surety is subrogated to the rights of a contractor whose debt it discharges. In fact, Defendant relies solely on *dicta* as its authority in a case involving only a performance bond. Further, Defendant asserts a standard which does not exist in controlling case law, namely, that the Surety must provide explicit notice of contractor default. This is not the standard, as the Surety need only provide an obligee notice that it has an interest in the contract funds on the project due to outstanding claims of subcontractors and suppliers. Accordingly, Defendant's Motion to Dismiss should be denied as a matter of law.

## I.
## UNDISPUTED FACTS

1. On September 28, 2005, Defendant, through the VA awarded two contracts to Texas Mechanical Systems, Inc. ("Texas Mechanical"). The first was for the Veterans Administration's Covered Ambulance Entrance in Big Spring, Texas, and the second was for the Veterans Administration's Correct Electrical Deficiencies in Big Springs, Texas.

2. In accordance with the Miller Act,[1] the Surety issued performance and payment bonds for the benefit of the VA to Texas Mechanical. The bonds for the Covered Ambulance Entrance project had a penal limit of $450,000 and the bonds for the Electrical Deficiencies project had a penal limit of $250,000 (collectively the "Bonds").

3. Following the issuance of the Bonds, claims were asserted against the Bonds based on Texas Mechanical's failure to pay all subcontractors and suppliers in accordance with its contracts with the VA. The Surety also received claims from various subcontractors and suppliers against payment bonds issued to Texas Mechanical on other projects.

4. To ensure that contract proceeds were appropriately used for labor and/or materials actually delivered to the projects, the Surety sent a letter of direction to the VA notifying it of the existence of these claims and expressly making a "formal request that no further funds be dispersed to TMS without the express written consent of ICW." *See Original Complaint* (Docket No. 1), Ex. B, which is incorporated herein by reference in its entirety.

5. The VA ignored the expressed letter of direction from the Surety and improperly released $114,877.38 of contract proceeds in four separate payments to Texas Mechanical.

---

[1] 40 U.S.C. § 3131.

6. Under the doctrine of equitable subrogation, the Surety is entitled to the recovery of the improperly released contract funds, and accordingly, Defendant's Motion to Dismiss is improper and should be denied.

## II.
## ARGUMENT AND AUTHORITIES

7. The Surety's argument that a Motion to Dismiss is improper can be summarized in two points:

> i. Defendant's claim that the Surety is only equitably subrogated to the rights of subcontractors on the Project is a proposition rooted in *dicta* with no precedential support. To the contrary, all precedent with respect to the doctrine of equitable subrogation, including case law from the U.S. Supreme Court, as well as this Court, has held that a surety is equitably subrogated to the rights of a contractor when it has discharged that contractor's obligations to subcontractors and suppliers.
>
> ii. Defendant incorrectly alleges that a surety must provide explicit notice of a contractor's default in order to trigger the government's duty to release funds in accordance with a letter of direction. However, this argument completely ignores the consistent rulings by federal courts that a surety need only provide notice to an obligee of its interest in the contract balances, which is based on claims received by subcontractors and suppliers.

### A. A Surety is Equitably Subrogated to the Rights of a Contractor When it Has Discharged a Contractor's Obligations to Pay Subcontractors and Suppliers

8. It is well-settled "that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule, widely applied in this country [is] generally known as the right of subrogation . . . ." *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 136-37 (1962).

9. This maxim has been given force across the federal system, including this Court and its predecessor, the Court of Claims. *See United States Fidelity & Guaranty Co. v. United States,* 475 F.2d 1377, 1381 (Ct. Cl. 1973) (noting that a surety was "entitled to the benefit of all

the rights of the laborers and materialmen whose claims it paid and those of the contractor whose debts it paid.") (emphasis added); *The Home Insurance Company v. The United States,* 46 Fed. Cl. 160, 162 (2000) (". . . the surety can have rights against the government if the government, after notice by the surety or the contractor that future payment should be made directly to the surety, nevertheless makes payments to the contractor. [This] type of action, denominated 'equitable subrogation' is permitted despite the lack of any direct privity between the surety and the government.").

10. Yet Defendant, contrary to the guidance of the federal courts, attempts to cloud the issue by relying on the Federal Circuit's opinion in *Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001) ("ICW"). Specifically, Defendant asserts this case as binding precedent for the proposition that a surety is only equitably subrogated to the rights of subcontractors and not that of the general contractor to which it issued the bonds. *Defendant's Motion to Dismiss* ("Defendant's Motion") (Docket No. 6), pg. 8. In support for this alleged rule of law, Defendant cites *United States v. Munsey Trust Co.*, 332 U.S. 243 (1947), quoting a portion of the opinion addressing whether laborers and materialmen had enforceable rights against the United States. Defendant's Motion, pg. 8. Yet, neither case holds the precedential value Defendant attempts to assert.

11. With respect to *ICW*, Defendant fails to mention that the passage which it cites as forbidding recovery by the Surety "is plainly *obiter dicta* as *ICW* involved only a performance bond." *National American Insurance Company v. The United States*, 72 Fed. Cl. 451, 454 (2006), *aff'd* 2007 U.S. App. LEXIS 20058 (Fed. Cir. Aug. 23, 2007. The court goes on to note that it can only accept the above notion that a surety is not subrogated to the rights of a contractor if it "turns a blind eye to more than a century of precedent – precedent that revealed

that it is not the *dicta* in *ICW*, but only its converse, that is 'well-established.' Those cases well-established, in other words, that a surety who discharges a contractor's obligation is subrogated to the rights of the contractor and, where appropriate, may enforce those rights against the United States." *Id.*

12. Defendant's reliance on *Munsey Trust* is likewise misplaced. Specifically, although *Munsey Trust* was correctly decided under its facts, "Munsey Trust never addressed the surety's ability to be equitably subrogated to the rights of the contractor whose debt it discharged . . . . Accordingly, [Munsey Trust] does not support the proposition that a surety does not step into the shoes of the contractor." *National American Insurance Co.*, 2007 U.S. App. LEXIS 20058 at *4. "Binding precedent clearly holds that a payment bond surety that discharges a contractor's obligations to pay a subcontractor is equitably subrogated to the rights of both the contractor and the subcontractor . . . ." *Id.*[2]

13. In light of the present facts, it is clear that once the Surety satisfied payments to subcontractors and suppliers asserted against bonds issued to Texas Mechanical, it became subrogated to the rights of Texas Mechanical, including a right to the remaining contract balances on projects for which Texas Mechanical served as contractor. As such, the Surety has stated a claim for which relief can be granted, dismissal under Rule 12(b)(6) is inappropriate, and Defendant's Motion to Dismiss should be denied.

---

[2] Although not relied on as heavily, Defendant also cites *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999), as additional support for their position. The application of *Blue Fox* to a surety's equitable subrogation claim was summarily dismissed by the Federal Circuit, as it noted that equitable subrogation was not at issue in *Blue Fox*, with rather the facts being a subcontractor that was seeking an equitable lien. *National American Insurance Co.*, 2007 U.S. App. LEXIS 20058 at *5. This point appears to be at least partially conceded by Defendant, as they note that *Blue Fox* is a case which did not involve a surety, and thus, did not involve a claim of equitable subrogation. Defendant's Motion, pg. 6, n. 1.

B. The Surety Provided the VA With Adequate Notice Necessary to Enforce its Equitable Subrogation Rights

14. Alternatively, Defendant states the Surety's Complaint should be dismissed because although equitably subrogated to Texas Mechanical's rights to the contract balances, the Surety failed to provide adequate notice to the VA. Defendant's Motion, pg. 12-14. Citing *Ransom v. United States*, 900 F.2d 242 (Fed. Cir. 1990), *Balboa Insurance Company v. United States*, 775 F.2d 1158 (Fed. Cir. 1985), and *ICW*, Defendant erroneously argues that the only way the doctrine of equitable subrogation is triggered is if a surety provides explicit notice of a contractor's default on a government contract. However, this simply is not the case.

15. With respect to Defendant's reliance on *Ransom*, and ignoring for the moment that *Ransom* did not deal with an equitable subrogation claim,[3] *Ransom* in no way stands for the proposition that equitable subrogation is only triggered by an explicit notice of default. To the contrary, *Ransom* merely stated that no notice was in fact given by the Surety in that case. However, Defendant illogically reasons that because the court failed to provide relief in the face of no notice that some how explicit notice of default is required. This is incorrect. For instance, the United States Claims Court, in discussing the *Ransom* opinion, focused not on the default portion of a Surety's notice, but rather whether any sort of notice existed, stating that "[o]nce the surety has notified the government, it can assert an equitable claim of subrogation." *Employers Ins. of Wausau v. United States*, 23 Cl. Ct. 579, 580 (1991).

16. With respect to *Balboa*, Defendant's fondness for *dicta* again is present as it attempts to paint *Balboa* as holding that the only way equitable subrogation is valid is if there is explicit notice of contractor default. Yet, this is not what was decided in *Balboa*. In fact, the

[3] In fact, the court even notes that plaintiff failed to assert the doctrine of equitable subrogation as a cause of action, and thus their opinion was confined to whether an explicit contract or an implied-in-fact contract existed. *Ransom*, 900 F.2d at 245.

Federal Circuit made clear that its holding was focused not on whether a surety provided some notice versus specific notice of default, but rather a holding confined to the decision that "both the Court of Federal Claims and [the Federal Circuit] have jurisdiction to hear the claim of a Miller Act surety against the United States for funds allegedly improperly distributed to a contractor." *Balboa*, 72 Fed. Cl. at 1163. Thus, as was the case with *Ransom*, to the extent these cases are instructional, they show merely that a notice of default is sufficient to trigger equitable subrogation rights. However, they do not stand for the narrower construction being promoted by Defendant that this is the only method for a surety to obtain its rights of subrogation.

17. Finally, to the extent that *ICW* is relied on by Defendant, *ICW's* non-applicability to a surety's right of equitable subrogation under a payment bond is evident based on the opinions of this Court and the Federal Circuit, as briefed *supra*.

18. In terms of what notice has been allowed for a valid equitable subrogation claim, the federal courts have demonstrated that notice by a surety to an owner of mounting claims from subcontractors and suppliers and a fear of possible default by its contractor is sufficient. Specifically, in *National American Insurance*, the letter sent by the surety to the owner stated only that the surety had been informed of a <u>single</u> unpaid contractor and that the surety now had an interest in the contract funds. 72 Fed. Cl. at 452, n. 2 (emphasis added). Yet, even in the face of such simplicity, the court held that this notice was sufficient for the surety to establish a right to the contract balances. *See also Commercial Cas. Ins. Co. v. United States*, 71 Fed. Cl. 104, 106 (2006) (equitable subrogation claim upheld when plaintiff merely "notified the government of outstanding claims by subcontractors and vendors on projects bonded by the surety and request[ed] that no payments be made . . . .") (internal quotations omitted).

19. In the present case, it is undisputed that the Surety notified the VA that it had become aware of claims for vendors and subcontractors of Texas Mechanical. In accordance with its rights, the Surety then requested that all payments be held and not disbursed to Texas Mechanical given the existence of these unpaid subcontractors and suppliers. Based on applicable case law, this notice is sufficient for the Surety to preserve its right of equitable subrogation, and accordingly, Defendant's Motion to Dismiss based on inadequate notice is without merit and should be denied.

## III.
## CONCLUSION

20. Defendant's Motion to Dismiss fails for two reasons: (1) the assertion that a surety is only subrogated to the rights of a subcontractor is not in line with extensive common law precedent; and (2) its assertion that explicit notice of default is required is inconsistent with findings in other cases where equitable subrogation has applied. Defendant has rather extrapolated an erroneous conclusion that explicit notice of default is the only option a surety has of preserving its rights.

21. For the foregoing reasons, Plaintiff, The Insurance Company of the West, respectfully requests that the Court deny Defendant, The United States' Motion to Dismiss, and grant the Surety all other and further relief to which it may be justly entitled.

Respectfully submitted,

LANGLEY WEINSTEIN HAMEL LLP

By: /s/ Gregory M. Weinstein
Gregory M. Weinstein
State Bar No. 21096430

901 Main Street
Suite 600
Dallas, Texas 75202
214.722.7160
214.722.7161 (facsimile)

ATTORNEYS FOR
THE INSURANCE COMPANY OF THE WEST

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on the following counsel of record by electronic mail, return receipt requested on this 13th day of September, 2007:

Ellen Lynch
Department of Justice
Attn: Classification U nit, 8th Floor
1100 L. Street, N.W.
Washington, D.C. 20005

/s/ Gregory M. Weinstein
Gregory M. Weinstein