# In the United States Court of Federal Claims

No. 07-395 C

(Filed: November 29, 2007)

| | |
|---|---|
| *********************************** | |
| **INSURANCE COMPANY OF THE WEST** | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |
| *********************************** | |

## ORDER

On August 17, 2007, the Government filed a motion to dismiss this case pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), on the grounds that Plaintiff Insurance Company of the West ("ICW") has failed to state any claim upon which relief can be granted. Briefing on this motion was completed on October 1, 2007. However, because the Court finds that the parties' briefs do not clearly set forth the parties' positions and do not adequately address the fundamental issues concerning the Government's stated grounds for dismissal, the Court ORDERS the parties to submit supplemental briefing as discussed below.

The Government proffered two alternative bases to support dismissal: (1) that ICW cannot bring an action against the Government because ICW only made payments pursuant to its payment bond and was not a "takeover" surety, and (2) that ICW failed to give proper notice of contractor default to the Government in order to recover for disbursed contract funds. Def.'s Mot. at 3. The Government has abandoned the first basis for dismissal, in light of the Federal Circuit's opinion in *National American Ins. Co. v. United States*, 498 F.3d 1301 (Fed. Cir. 2007). Def.'s Reply at 1, n.1.

Because the parties devoted most of their briefing to this abandoned issue, the remaining issue concerning the adequacy of ICW's notice of contractor default to the Government was given a rather scant treatment in both parties' briefs. The Government used only about four pages total from its motion and its reply brief to discuss this issue. ICW only discussed the issue on about two pages of its response brief.

Moreover, the parties' positions as to what constitutes adequate notice of contractor default are poorly developed. The Government was quite clear in its argument that "notice of default must be specific to the bonded contract," but failed to elaborate as to what such notice must entail. Def.'s Mot. at 14. To illustrate, in its motion, the Government stated that "a surety triggers the Government's equitable duty to withhold contract payments after providing the Government with notice of *a contractor's default*," indicating that the notice must inform the Government that the contractor has actually defaulted under the bonded contract at issue. *Id.* at 12 (emphasis added). Later, in is reply brief, the Government stated that a duty to withhold payments "is triggered only when the surety informs the Government of the contractor's *potential* default under the bonded contract." Def.'s Reply at 3 (emphasis added).

ICW's response brief similarly fails to clearly state what ICW believes constitutes adequate notice. After devoting most of its section on this issue to an attempt to show the logical fallacy of the Government's argument, ICW simply concluded that, "notice by a surety to an owner of mounting claims from subcontractors and suppliers and a fear of possible default by its contractor" is sufficient to trigger the Government's equitable duty, "[b]ased on applicable case law." Pl.'s Resp. at 7-8. In the "case law" cited by ICW, however, there seemed to be no question that the surety's notice was of actual contractor default under the bonded contract at issue. *See, e.g. National Am. Ins. Co. v. United States*, 72 Fed.Cl. 451, 458, n.17 (2006) (stating that the record "irrefutably indicates" that the Government was made aware of an actual default by the contractor); *Commercial Cas. Ins. Co. v. United States*, 71 Fed. Cl. 104, 107, 112 n.10 (2006). ICW failed to cite as support other cases, cited by the parties in this very briefing for other propositions, which could be interpreted to suggest notice of a potential default is sufficient. In addition, ICW's brief does not address the fact that some of the cases the parties have cited describe notice "of default by the contractor under the bond" as being "essential." *E.g., Ins. Co. of the West v. United States*, 243 F.3d 1367, 1371 (Fed. Cir. 2001).

Accordingly, to clarify these inconsistencies and to provide a more complete discussion of binding authority on the requirements for proper and adequate notice of contractor default, the Court orders that the parties submit supplemental briefing addressing, *inter alia*, the following:

(1) Can notice of a surety's belief that a contractor is going to default, as opposed to notice that the contractor has already defaulted, trigger an equitable duty on the part of the Government to act reasonably to protect the interests of the surety?

a. Compare the pertinent portions of:

*Newark Ins. Co. v. United States*, 144 Ct.Cl. 655, 169 F.Supp. 955, 957 (1959) ("[i]f it is made to appear that the Government's officials, after due notice *of the facts giving rise to an equitable right* in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to a judgment" (emphasis added));

*Balboa Ins. Co. v. United States*,775 F.2d 1158, 1164 (Fed. Cir. 1985) ( "the Government has no legal obligation to suspend a progress payment merely upon the unsupported request of a contractor's surety"); and

*American Fidelity Fire Ins. Co. v. United States,* 513 F.2d 1375, 1380 (Ct. Cl. 1975) (finding that the plaintiff informed the Government of "a caveat that a situation was arising wherein the contractor *may* default and plaintiff surety wanted to preserve its right of subrogation," and holding that "[d]anger signals" were apparent to the Government sufficient to trigger a "stakeholder" duty to act reasonably to protect the interests of the surety" (emphasis added)).

b. Cite and explain the applicability of any other binding cases which specifically hold that a surety's notice must inform of an actual default or which specifically hold that a surety's notice may inform of merely a potential default.

c. Explain why the policies and principles upon which the Government's "stakeholder" duty and the doctrine of equitable subrogation rest support either a requirement that a surety's notice inform of an actual default or a requirement that a surety's notice inform of a potential default. *See Commercial Cas. Ins.*, 71 Fed. Cl. at 112-13; *Balboa*, 775 F.2d at 1161-62.

(2) If notice of a surety's belief that contractor default is probable can trigger an equitable duty on the part of the Government to act reasonably to protect the interests of the surety, how reasonable or certain must be the surety's belief of probable contractor default? What evidence or assertions must a surety present to the Government to establish that contractor default is probable?

(3) Briefly discuss the point at which a contractor can be said to have actually "defaulted" under the bond and/or contract. At what point did the prime contractor in this case actually default under the bonds at issue?

The Government's supplemental brief shall be due on or before **January 18, 2008**. ICW's supplemental response brief shall be due on or before **February 19, 2008**. The Government may file a supplemental reply brief within fourteen days of the date on which ICW files its response brief. The briefs shall conform to the length and format requirements set forth in the RCFC.

s/Edward J. Damich
EDWARD J. DAMICH
Chief Judge