IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-395C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S NOVEMBER 29, 2007 ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, respectfully responds to the Courts's November 29, 2007 order directing the parties to provide supplemental briefing concerning the motion to dismiss for failure to state a claim upon which relief can be granted. Briefing on Defendant's motion was completed on October 1, 2007. The Court issued its November 29, 2007 order requesting supplemental briefing to "provide a more complete discussion of binding authority on the requirements for proper and adequate notice of contractor default . . . ." Order, at 2 (Fed. Cl. Nov. 29, 2007).

Respectfully, the issue before the Court is not whether the surety must give notice of actual or potential default to trigger the Government's equitable duty. As we explain more fully below, a surety's notice of an actual default under the bonded contract is sufficient to trigger the Government's duty of equitable subrogation, and notice of potential default under the bonded contract may be sufficient to trigger the Government's duty; however, notice of actual or potential default on another project is insufficient to trigger the Government's "stakeholder" duties. The relevant question before the Court is what constitutes adequate notice to trigger the Government's "stakeholder" duties. To provide adequate notice, the surety must notify the

contracting officer of the contractor's actual or pending financial failure that threatens completion of the bonded contract. In other words, to trigger the Government's "stakeholder" duty, the surety must provide evidence that would cause a contracting officer to question whether he should be prepared to default the contractor. The fact that a contractor has unpaid bills on one project – even if it were another Government bonded project – is simply insufficient to cause a contracting officer to consider defaulting the contractor on a different bonded project.

In this case, the Government's "stakeholder" duty was not triggered because plaintiff only provided notice that the contractor had unpaid bills on a different bonded project. All of the applicable authority demonstrates that the surety's notice must be related to the contractor's performance on the bonded contract upon which the surety's claim is based. Thus, based upon this authority, it is clear that plaintiff did not provide sufficient information concerning the bonded contract that demonstrated the contractor's performance on the Government's contract was threatened, and therefore, plaintiff's claim must be dismissed for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. A Surety's Notice Of Actual Or Potential Default Under The Bonded Contract May Trigger The Government's Duty To Protect The Surety's Interests

The Court's order cites three cases that deal with the Government's improper disbursement of funds after the surety provided notice to the contracting officer that the contractor was in actual or potential default under the bonded contract. In other cases, the Court of Appeals for the Federal Circuit, or its predecessor, the United States Court of Claims, have determined that notice of actual contractor default under the bonded contract must trigger the

Government's duty to protect the surety's interests, while notice of potential contractor default under the bonded contract may trigger the Government's duty. Ultimately, the principles underlying the doctrine of equitable subrogation demand that the Government's "stakeholder" duty is triggered only upon notice of default under the bonded contract.

A. The Cases Cited In The Court's Order Demonstrate That Actual Default Triggers The Government's "Stakeholder" Duty

In Newark Ins. Co., the Government made a final contract payment to the contractor's assignee, rather than surety, after the surety informed the Government that the contractor had not paid it subcontractors for work performed on the bonded contract. Newark Ins. Co. v. United States, 144 Ct. Cl. 655, 169 F. Supp. 955, 956 (1959). The Court directed the parties attention to the portion of the Newark Ins. Co. decision that states:

> [i]f it is made to appear that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to a judgment.

Newark Ins. Co., 169 F. Supp. at 957 (emphasis added). This case holds that the surety must provide the Government with sufficient information to indicate that the surety has an equitable right to the contract funds. However, it is important to note that the surety only has an equitable interest in the funds retained for the bonded contract. Indeed, as the Government noted in its reply, the Court of Appeals for the Federal Circuit has found that a surety does not have a right to retained funds of a different Government contract, and noted that "[s]ubrogation is bottomed 'on the unpaid debts on each contract; relates back in time to the execution of that specific bond; and is limited in scope to the debts arising under one contract.'" Dependable Ins. Co., Inc. v. United

States, 846 F.2d 65, 67 (Fed. Cir. 1988) (emphasis in original). In Newark Ins. Co., the Court found that the surety provided notice of its right to the contract funds by demonstrating that it had informed the Government that the contractor had not paid subcontractors for work performed on the bonded contract. Newark Ins. Co., 169 F. Supp. at 956. By informing the Government that the contractor was in actual default on the bonded contract, the surety triggered the Government's duty to withhold contract funds for the surety's benefit.

In Balboa, the Court of Appeals for the Federal Circuit appears to require actual notice of default to trigger the Government's duty to withhold contract funds. While the exact terms of the surety's letter to the Government are not outlined in the opinion, it is clear that the surety "believe[d] that [the contractor] was in financial straits and would not be able to fulfill its payment and performance obligations." Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed. Cir. 1985). The Court noted that "the Government has no legal obligation to suspend a progress payment merely upon the unsupported request of a contractor's surety." Id. at 1164. The Court went on to note that, once the surety has notified the Government that a contractor is in default, the Government must take "'reasonable steps to determine for itself that the contractor had the capacity and intention to complete the job.'" Id. (citing Fireman's Fund Ins. Co. v. United States, 362 F.Supp. 842, 848 (D.Kan. 1973)). Throughout the opinion, the Court references the need for the contractor to be in actual default. Balboa Ins. Co., 775 F.2d at 1162 (noting that "we are satisfied that the United States becomes a stakeholder with the duty of acting with reasoned discretion when a Miller Act surety alleges that the contractor has breached the contract by defaulting under one of the bonds.") (emphasis added); Id. at 1163 (noting with approval a district court case that determined "'[t]he surety's rights apply to the total fund . . .

which remains in the hands of the United States . . . at the time notice of default under its bond is established.'" (emphasis added) (citing National Surety Corp. v. United States, 319 F. Supp. 45, 49 (N.D.Ala. 1970)). It is clear from Balboa that notice of default, whether actual or potential, is inextricably linked with default under the bond at issue.

Finally, in American Fidelity Fire Ins. Co. v. United States, the Court determined that a surety's letter triggered the Government's duty to withhold contract funds from the contractor because the surety's letter referenced sections of the California Civil Code that do not have "any application unless there is a defaulting principal or one who is about to default." American Fidelity Fire Ins. Co. v. United States, 513 F.2d 1375, 1380 (Ct. Cl. 1975). The American Fidelity court found that "danger signals were apparent if the recipient examined these Code sections because they all dealt with defaulting principals." Id. (emphasis added). This case turned upon the fact that the California code sections cited in the surety's letter deal with a surety's right to funds "[i]f a surety satisfies the principal obligation," and "upon satisfying the obligation of the principal . . . ." Id. at 1380, n.6, citing California Civil Code §§ 2847, 2848. The Court interpreted the surety's notice as a direct statement expecting contractor default, thus providing the contracting officer with the kind of notice that would indicate that the contractor may not be able to continue performance of that contract. Again, the default must be specific to the bonded contract.

The common factor in these three cases is that the Government had notice that the contractor was in actual or potential default on the Government contract at issue. The contracting officers in these three cases had reason to believe that the contractors would not be able to continue performance of their contracts. Because plaintiff in this case did not indicate

that the contractor was in actual or potential default on the Government contracts at issue, and, therefore, the contracting officer had no reason to believe that the contractor could not continue performance, the surety's notice was insufficient to trigger the Government's "stakeholder" duty.

B. Binding Caselaw Also Indicates That Notice Of Contractor Default Must Be Specific To The Bonded Contract

Respectfully, the Government's motion to dismiss for failure to state a claim upon which relief can be granted focused upon plaintiff's failure to provide notice to the Government that the contractor was or would be in default under the bonds for the Government contracts at issue. In addition to the three cases examined above, a review of other precedent from the United States Court of Appeals for the Federal Circuit reveals that the Court has considered default under the bonded contract to be an important factor in its analysis.

In Fireman's Fund Ins. Co. v. United States, a case where the surety failed to notify the Government of the contractor's unpaid debts until after the contractor abandoned the contract, the Court determined that "only when [the surety] may become a party to the bonded contract, should the government owe it any duty." Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990). The surety will never become a party to a contract with the Government unless the bonded contractor defaults on the bonded contract. As the Court determined in Dependable Ins. Co., Inc. v. United States, after executing performance and/or payment bonds for a specific contract, the surety's remedy is limited to funds from that particular contract, because "[s]ubrogation is bottomed 'on the unpaid debts on each contract; relates back in time to the execution of that specific bond; and is limited in scope to the debts arising under one contract.'" Dependable Ins. Co., Inc., 846 F.2d at 67. Without notice to the contracting

officer that would lead him to believe that the contractor's performance on the bonded contract is threatened, the surety's interest in the contract funds is not triggered.

C. The Policies And Principles Underlying The Doctrine Of Equitable Subrogation Support A Requirement That A Surety's Notice Must Inform The Government Of Default Related To The Bonded Contract

The Government based its motion upon the premise that the surety in this case failed to state a claim upon which relief can be granted because the surety did not notify the Government that the contractor defaulted or may default on the bonded contract. The surety's notice in this case simply informed the Government that the contractor didn't pay its bills on another bonded project. See Compl., Ex. B. The policies and principles underlying the doctrine of equitable subrogation support a requirement that the surety must inform the Government of default related to the bonded contract.

As a well-respected treatise explains:

> Subrogation is an equitable remedy that arises under the following basic circumstances:
>
> 1. the obligor (in this context, the principal debtor) owes a debt or duty of some kind to the creditor;
>
> 2. the subrogee (here, the surety), pursuant to his or her own obligation to the creditor, pays that debt or discharges that duty; and
>
> 3. these circumstances make it inequitable that the subrogee should bear the loss while the obligor is unjustly enriched.

Richard A. Lord, 23 Williston on Contracts § 61:51 (4th ed.).

Thus, "subrogation applies where a party not acting voluntarily, but under some compulsion pays a debt or discharges an obligation for which another is primarily liable and

which in equity and good conscience ought to be discharged by the latter." First Nat. City Bank v. United States, 212 Ct. Cl. 357, 548 F.2d 928, 936 (1977). "The purpose of subrogation is to reallocate the cost of performance from the secondary obligor to the principal obligor." Restatement (Third) of Suretyship and Guaranty, § 27, comment b. Moreover, subrogation is a "creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Argonaut Ins. Co. v. United States, 193 Ct.Cl. 483, 434 F.2d 1362, 1367 (1970). See also In re Lewis, 398 F.3d 735, 747 (6th Cir. 2005) (citations omitted) ("Equitable subrogation is a flexible, elastic doctrine of equity, and its application should and must proceed on the case-by-case analysis characteristic of equity jurisprudence. Subrogration is granted, if at all, with due regard to the rights of others; and it will be refused where it is inequitable to grant it"); First Federal Sav. Bank v. United States, 118 F.3d 532, 534 (7th Cir. 1997) ("a court must decide whether to invoke the doctrine [of equitable subrogation] based on the circumstances of the particular case"); In re Bridge, 18 F.3d 195, 201 (3d Cir. 1994) (citation omitted) ("the principle of subrogation is one of equity merely, and it will accordingly be applied only in the exercise of equitable discretion, and always with a due regard to the legal and equitable rights of others").

To determine that a surety has fulfilled the notice requirement by alleging that the contractor has unpaid bills on another project simply does not conform with this equitable principle. A rule that a surety that can trigger the Government's "stakeholder" duty with notice that the contractor has unpaid bills on other projects, without reference to the Government project that is the subject of the bond, would significantly hinder the performance of Government contracts. Government agencies would be forced to perform the job that is the surety's, namely,

determine whether the contractor will be able to financially complete the contract based upon information unrelated to the Government's contract. As the Court of Appeals for the Federal Circuit noted in Fireman's Fund Ins. Co., "only when [the surety] may become a party to the bonded contract, should the government owe it any duty. The surety knows best when this may occur; consequently, only notice by the surety triggers the government's equitable duty." Fireman's Fund Ins. Co., 909 F.2d at 499.

Finally, as the Court noted in Dependable Ins. Co., Inc., a surety cannot lay claim to funds other than those funds retained by the Government for performance of the bonded contract. Dependable Ins. Co., 846 F.2d at 67. Because subrogation is limited to the bonded contract, it follows that the surety must give notice specific to the bonded contract.

## II. Notice Of A Surety's Belief Regarding Contractor Default Must Be Related To The Bonded Contract

The issue presented to the Court in the Government's motion to dismiss is not whether notice of potential default is sufficient to trigger the Government's duty to act reasonably to protect the surety's interests; the issue is whether the surety in this case provided sufficient notice when it informed the Government that the contractor did not pay bills on a completely unrelated project.[1] Therefore, to trigger the Government's duty, the evidence the surety presents must

[1] The Court also requested briefing on when a contractor actually "defaults" under a bond and/or contract, and when the contractor in this case actually defaulted under the bonds at issue. The Government avers that its motion to dismiss deals solely with whether the surety provided adequate notice when it informed the Government that the contractor had unpaid bills on another project, and, therefore, it is not relevant when the contractor actually defaulted under the bonds. However, the Government provides the following information: the contractor was in default status on the Covered Ambulance Entrance and Correct Electrical Deficiencies projects as of September 22, 2006. Attachment A. The surety's letter informing the Government that the contractor was in default on another project was dated June 28, 2006. See Compl., Ex. B.

cause the contracting officer to consider whether he should be prepared to default the contractor. In this case, the surety did not provide adequate notice when it informed the Government that the contractor did not pay bills on an unrelated project.

As the United States Court of Appeals for the Federal Circuit noted in Balboa, "the Government has no legal obligation to suspend a progress payment merely upon the unsupported request of a contractor's surety." Balboa Ins. Co., 775 F.2d at 1164 (citing United States Fidelity & Guaranty Co. v. United States, 676 F.2d 622, 628, 230 Ct. Cl. 355 (1982)). In this case, the notice provided by the surety is certainly unsupported because the notice made no reference to the bonded contract. As we demonstrated above, a critical aspect of subrogation is that the contractor default must be specific to the bonded contract.

Furthermore, the Court in Balboa went on to find that, after notification from a surety that the contractor is in default, "the Government has an obligation to take 'reasonable steps to determine for itself that the contractor had the capacity and intention to complete the job.'" Id. The Government in this case had no reason to determine if the contractor had the capacity or intention to complete the job, because the surety did not inform it that it had concerns regarding that job.

## CONCLUSION

For the foregoing reasons, as well as those stated in our August 17, 2007 motion to dismiss and in our October 1, 2007 reply, the United States respectfully requests that the Court dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Ellen M. Lynch
ELLEN M. LYNCH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-7994
Fax: (202) 514-8624

January 18, 2008

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 18th day of January, 2008, a copy of "Defendant's Supplemental Brief In Response To The Court's November 29, 2007 Order Regarding Defendant's Motion To Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Ellen M. Lynch
Ellen M. Lynch