**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INSURANCE COMPANY OF THE WEST** | ) | |
| ***Plaintiff,*** | ) | |
| **V.** | ) | **No. 07-395C** |
| **THE UNITED STATES** | ) | **(Chief Justice Damich)** |
| ***Defendant.*** | ) | |

**INSURANCE COMPANY OF THE WEST'S SUPPLEMENTAL BRIEF REGARDING NOTICE OF DEFAULT NECESSARY TO TRIGGER EQUITABLE SUBROGATION RIGHTS**

LANGLEY WEINSTEIN HAMEL LLP

By: /s/ Gregory M. Weinstein
Gregory M. Weinstein
State Bar No. 21096430

901 Main Street
Suite 600
Dallas, Texas 75202
214.722.7160
214.722.7161 (facsimile)

ATTORNEY FOR
THE INSURANCE COMPANY OF THE WEST

# TABLE OF CONTENTS

UNDISPUTED FACTS ..... 4

ARGUMENT AND AUTHORITIES ..... 6

A. A Surety is Not Required to Provide Notice of Actual Default on the Underlying Bonded Contract ..... 6

i. Principles of Equity Demand that the Government's "Stakeholder" Duty Be Enforced Following Notice by a Surety of its Interest in Contract Funds ..... 6

ii. Each Case Cited by this Court Supports the Surety's Equitable Right to Contract Balances ..... 7

iii. The Defendant Can Point to No Case Which Holds that Actual Notice of Default Under the Bonded Contract is Required for a Surety to Exercise its Equitable Subrogation Rights ..... 9

B. For The Doctrine of Equitable Subrogation to Apply, the Surety is Only Required to Give Notice that it has an Interest in Contract Balances Due to Claims Made Against the Surety's Bonds ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

## CASES

*American Fidelity Fire Ins. Co. v. United States*, 513 F.2d 1375 (Ct. Cl 1975) ...................... 8, 10

*Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985) ....................................... 7, 8, 10

*Commercial Cas. Ins. Co. v. United States*, 71 Fed. Cl. 104 (2006) ............................................. 9

*Dependable Ins. Co., Inc. v. United States*, 846 F.2d 65 (Fed. Cir. 1988) .................................... 9

*District of Columbia v. Aetna Ins. Co.*, 462 A.2d 428 (D.C. Ct. App. 1983) .......................... 9, 10

*Employers Ins. of Wausau v. United States*, 23 Cl. Ct. 579 (1991) ........................................... 6, 9

*Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495 (Fed. Cir. 1990) .................................... 9

*National American Insurance Company v. The United States*, 72 Fed. Cl. 451 (2006), *aff'd* 498 F.3d 1301 (Fed. Cir. 2007) ........................................................................................ 9

*Newark Ins. Co. v. United States*, 169 F. Supp 955 (1959) .......................................................... 7

*Pearlman v. Reliance Insurance Company*, 371 U.S. 132 (1962) .................................................. 6

*Transamerica Ins. Co. v. United States*, 989 F.2d 1188 (Fed. Cir. 1993) ................................. 6, 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INSURANCE COMPANY OF THE WEST** | ) | |
| *Plaintiff,* | ) | |
| **V.** | ) | **No. 07-395C** |
| **THE UNITED STATES** | ) | **(Chief Justice Damich)** |
| *Defendant.* | ) | |

**INSURANCE COMPANY OF THE WEST'S SUPPLEMENTAL BRIEF REGARDING NOTICE OF DEFAULT NECESSARY TO TRIGGER EQUITABLE SUBROGATION RIGHTS**

Plaintiff, Insurance Company of the West (the "Surety"), files this its Supplemental Brief Regarding Notice of Default Necessary to Trigger Equitable Subrogation Rights, and would respectfully show the Court the following:

**EXECUTIVE SUMMARY**

When the Surety sent a letter of direction to the VA following claims that had been asserted on bonds issued to its contractor, the VA violated its duty as a "stakeholder" by ignoring the Surety and releasing contract funds. Although the Defendant would require that its "stakeholder" duty only apply in cases on express notice of actual default on an underlying bonded contract, this standard is not recognized by any court. Instead, case law evidences that notice is sufficient when it places an owner on notice of potential problems with a contractor. This is especially true when attendant circumstances exist, which is the case here, as the VA was the original party to raise concerns over the extreme lack of progress on the project.

**I.**
**UNDISPUTED FACTS**

1. On September 28, 2005, the United States (the "Defendant"), through the Department of Veteran Affairs (the "VA") awarded two contracts to Texas Mechanical Systems,

Inc. ("Texas Mechanical"). The Surety issued performance and payment bonds for the benefit of the VA to Texas Mechanical.

2. Due to claims against bonds issued to Texas Mechanical, the Surety sent a letter of direction to the VA notifying it of the existence of these claims and expressly making a "formal request that no further funds be dispersed to TMS without the express written consent of ICW." *See Original Complaint* (Docket No. 1), Ex. B, which is incorporated herein by reference in its entirety. The VA ignored the express letter of direction from the Surety and improperly released $114,877.38 of contract proceeds in four separate payments to Texas Mechanical, resulting in the present litigation.

3. Following the filing of suit, Defendant filed a Motion to Dismiss on two grounds: 1) that the Surety was foreclosed from relief because it incurred losses under the payment bond instead of the performance bond; and 2) that the letter of direction was not sufficient to trigger the Surety's equitable subrogation rights. The former argument has since been abandoned by Defendant.

4. Prior to ruling on Defendant's Motion to Dismiss, the Court has asked for supplemental briefing on the aspect of notice provided by the Surety to Defendant. As will be shown, the letter of direction sent by the Surety was sufficient to trigger the Defendant's "stakeholder" duty. Accordingly, Defendant's Motion to Dismiss is improper and should be denied.

## II.
## ARGUMENT AND AUTHORITIES

### A. A Surety is Not Required to Provide Express Notice of Actual Default on an Underlying Bonded Contract

#### *i.* *Principles of Equity Demand that the Government's "Stakeholder" Duty Be Enforced Following Notice by a Surety of its Interest in Contract Funds*

5. One of the pillars of suretyship rests on the principle "that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule, widely applied in this country [is] generally known as the right of subrogation . . . ." *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 136-37 (1962). However, with respect to payment of contract funds, this right of subrogation is not effective until a surety notifies the owner that it intends to exercise its right. *See generally, Employers Ins. of Wausau v. United States*, 23 Cl. Ct. 579, 580 (1991).

6. Although Defendant urges that a surety must provide notice of actual default on the specific bonded contract to trigger the Government's "stakeholder" duty, Defendant is unable to point to any case that espouses such a restrained holding. First and foremost, such a requirement does not track the normal practices of owners and sureties on construction projects, as it is the owner who defaults the contractor on a particular, not the surety. Thus, it is the *owner informing the Surety* of a default, not the other way around.

7. Further, as subrogation is a "creature of equity [and] enforced solely for the purpose of accomplishing the ends of substantial justice," *Transamerica Ins. Co. v. United States*, 989 F.2d 1188, 1191 (Fed. Cir. 1993) (internal citations omitted), courts have focused on enforcing these ends and not on the specific details of the notice provided. Several cases are

instructive on this point, including the three noted by this Court in its November 29, 2007 Order.[1]

*ii.* *Each Case Noted by this Court Supports the Surety's Equitable Right to Contract Balances*

8. For instance, in *Newark Ins. Co. v. United States*, the Court of Claims was faced with whether the Government was liable to a surety for money that was improperly released, even when there was "no stake" under the facts of the case. 169 F. Supp 955, 957 (1959). In holding that the Government was liable, the Court paid particular attention to principles of equity and noted that it is not the decision of the Government to choose one competing claim over another (as the VA did in this case), and that "after due notice of the facts giving rise to an equitable right in the [ ] surety company," the surety was entitled to reimbursement for the improperly released funds. *Id.*

9. Further buttressing this doctrine is the opinion by the Court of Appeals for the Federal Circuit in *Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985). In reaffirming the equitable principles espoused in *Newark*, the *Balboa* Court placed the onus on the Government to properly investigate whether a contractor has "the capacity and intention to complete a job." *Id.* at 1164. Such an investigation would have revealed that the Surety's concerns were valid, as Texas Mechanical was officially defaulted in September 2006.[2] As noted by the *Balboa* Court, Texas Mechanical's ultimate default tends to show that the VA did not exercise reasonable discretion in releasing the funds following notice by the Surety. *Id.*

10. Although Defendant wants to focus on the statement in *Balboa* that the "Government has no legal obligation to suspend a progress payment merely upon the

---

[1] *See Order* (Dkt. 9), pg. 2-3.

[2] Although the Court requested briefing on the line when a contractor is said to have crossed into "actual default," because no holding requires notice of only actual default (as briefed *infra*), this inquiry is moot.

*unsupported* request of a contractor's surety," the evidence in the case shows that in no way was notice by the Surety unsupported. *Id.* (emphasis added). In fact, in late-March 2006, the VA expressed its concern to Texas Mechanical that only 20% of work had been completed despite 65% of the construction period having elapsed. A true and correct copy of this correspondence is attached hereto as Exhibit "1," and incorporated by reference in its entirety. The existence of such a large delta in actual completion versus time expired is yet another factor evidencing that the VA did not exercise reasonable discretion by ignoring the Surety's letter of direction. *Id.* Thus, given the VA's own concerns coupled with notice by the Surety of mounting claims against its bonds, *Balboa* shows that the Surety's notice was properly supported and the VA did not exercise reasonable discretion by ignoring the Surety's request that contract funds be held.

11. The final case noted by this Court likewise supports the Surety's position. Specifically, in *American Fidelity Fire Ins. Co. v. United States*, 513 F.2d 1375 (Ct. Cl 1975), the Government argued that a letter of direction did not have to be followed because the surety did not expressly offer "reason[s] to believe the contractor would not pay [a subcontractor]." *Id.* at 1379. In rejecting this argument, the Court of Claims relied on the holding of *Newark* and focused on the "danger signals" of a possible default that were apparent. *Id.* at 1380. In this case, in addition to the Surety's letter of direction to the VA, other "danger signals" were present, the most clear of which is the VA's letter to Texas Mechanical regarding the significant shortfall in completion. *See* Exhibit "1."

12. Accordingly, all three cases noted by this Court, and the equitable principles cited by each, support the fact the Surety's letter of direction to the VA was sufficient to trigger Defendant's "stakeholder" duty.

*iii.* *The Defendant Can Point to No Case Which Holds that Actual Notice of Default Under the Bonded Contract is Required for a Surety to Exercise its Equitable Subrogation Rights*

13. Defendant can cite no case in support of its position that its "stakeholder" duty is only triggered by express notice of actual default on the specific bonded contract. In fact, of the two cases cited in pseudo-support by Defendant, one dealt with whether notice can be retroactively applied to previously released funds (which is not an issue here),[3] and the other with whether a surety could overcome a competing IRS claim (which also is not an issue here).[4] Thus, neither is in force or applicable to this case.

14. With respect to cases showing that generalized notice is sufficient to trigger the Defendant's "stakeholder" duty, several give guidance. For instance, this Court has held that a letter of direction where the surety informed the owner of a single unpaid contractor was sufficient to trigger the Government's "stakeholder" duty. *National American Insurance Company v. The United States*, 72 Fed. Cl. 451, 452, n.2 (2006), *aff'd* 498 F.3d 1301 (Fed. Cir. 2007) (*emphasis added*); *cf. Employers Ins. of Wausau v. United States*, 23 Cl. Ct. 579, 580 (1991) ("Once the surety has notified the government, it can assert an equitable claim of subrogation."); *Commercial Cas. Ins. Co. v. United States*, 71 Fed. Cl. 104, 106 (2006) (notice generically stated that there were outstanding claims by "subcontractors and vendors on projects bonded by surety, making it imperative that the funds on the . . . [Project] be properly directed and/or used in the process by the surety in obtaining equitable subrogation."[5]).

15. In fact, notice has been held to be sufficient when a surety did not even bond one of the projects in question. *District of Columbia v. Aetna Ins. Co.*, 462 A.2d 428 (D.C. Ct. App.

---

[3] *Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495 (Fed. Cir. 1990).

[4] *Dependable Ins. Co., Inc. v. United States*, 846 F.2d 65 (Fed. Cir. 1988). The limited nature of this holding was reiterated by the Court of Appeals for the Federal Circuit in *Transamerica*, 989 F.2d at 1192.

[5] *See Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment*, Cause No. 03-2033C in the United States Court of Federal Claims (Dkt. 33), pg. 2.

1983). In explaining the reasoning of its holding, the *District of Columbia* Court reinforced the notion that principles of equity dictate recovery by a surety when it notifies an owner of its interest in contract funds. *Id.* at 431.

16. Therefore, the cases alluded to by this Court, as well as other cases across the federal system, show that a surety will not be held to draconian standards for complying with specific notice requirements, but instead will have equitable subrogation rights to contract funds in instances where an owner is notified of claims against the surety's bonds.

**B. For The Doctrine of Equitable Subrogation to Apply, the Surety is Only Required to Give Notice that it has an Interest in Contract Balances Due to Claims Made Against the Surety's Bonds**

17. This Court lastly inquired as to what exact conditions must be present since notice of actual default is not required to trigger a "stakeholder" duty. While no court has set forth an exact recipe for notice to be sufficient, language from a number of important cases demonstrates notice is ample when it, plus other attendant circumstances, puts the owner on notice of possible problems with the contractor. As noted above, although *Balboa* stated that *unsupported* requests would be invalid, 775 F.2d at 1164, the facts of this case show that the Surety's letter of direction was valid due to the VA's admonitions to Texas Mechanical for only 20% of the work having been completed when 65% of the construction period had run. *See Exhibit* "1."

18. This theme was also present in *American Fidelity*, as the court repeatedly focused on the "danger signals" that were apparent and the fact the owner had sufficient knowledge of a potential default by the contractor. 513 F.2d at 1380. In the present case, the Surety's notice was clearly accompanied by any other signs of "danger," as the VA was the original party to express concern over the lack of progress by Texas Mechanical.

19. As a result, the Surety's letter of direction, especially when viewed in light of the VA's own concerns, is sufficient to put the VA on notice of potential problems and trigger the Government's "stakeholder" duty.

## III.
## CONCLUSION

20. Defendant's Motion to Dismiss is improper for two reasons: (1) Defendant's argument that express notice of actual default on an underlying bonded contract is an overly stringent standard to which no surety has ever been held; and (2) relevant court holdings reveal that a "stakeholder" duty will be triggered when notice is accompanied by other "danger signals," which was the case here.

21. For the foregoing reasons, Plaintiff, The Insurance Company of the West, respectfully requests that the Court deny Defendant, The United States' Motion to Dismiss, and grant the Surety all other and further relief to which it may be justly entitled.

Respectfully submitted,

LANGLEY WEINSTEIN HAMEL LLP

By: /s/ Gregory M. Weinstein
Gregory M. Weinstein
State Bar No. 21096430

901 Main Street
Suite 600
Dallas, Texas 75202
214.722.7160
214.722.7161 (facsimile)

ATTORNEY FOR
THE INSURANCE COMPANY OF THE WEST

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on the following counsel of record by electronic delivery on this 19th day of February, 2008:

Ellen Lynch
Department of Justice
Attn: Classification U nit, 8th Floor
1100 L. Street, N.W.
Washington, D.C. 20005

_/s/ Gregory M. Weinstein_______________
Gregory M. Weinstein